IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

Miriam E. Briggs-Muhammad

_____

_____

_____
(Full name of plaintiff(s))

2009 APR -1 PM 1:28

PETER OPPENEER
CLERK US DIST COURT
WD OF WI

Case Number: _____

vs

Wal-Mart Associates Inc; Store 2335,
Peggy Wilson, Dan Astle,
Tim Utter, Jason Winckler, All sued in
Et. Al. (Full name of defendant(s)) John and Jane Does 1 thru 5
their Individually and Personally Capacity.

(Supplied by clerk)

(Jury Demanded)

## COMPLAINT

A. JURISDICTION  1983, 1985, 1986 - Pendent Jurisdiction is invoked

1. Miriam E. Briggs-Muhammad , resides at
   (Plaintiff)

   9 O'Brien Court , at Madison, Wisconsin 53714
   (Address)                (City, State)

2. Defendant Peggy Wilson                    is employed as
   (Name of First Defendant)
   Wal-Mart Store
   Store Manager          at 4198 Nakoosa Trail, Madison WI
   (Position and Title, if any)        (Address)

3. Defendant Dan Astle                       is employed as
   (Name of Second Defendant)
                                                Wal-Mart Store
   Front End Store Manager  at 4198 Nakoosa Trail, Madison, WI
   (Position and Title, if any)        (Address)

B. CAUSE OF ACTION

> On the space provided on the following pages, tell what specific incidents or conversations occurred which led you to believe your constitutional or federal rights have been or are presently being violated. IT IS IMPORTANT THAT THE ALLEGATIONS BE BRIEF, BUT SPECIFIC. Do not cite legal authorities, such as earlier court decisions or laws enacted by the legislature or Congress, to support your lawsuit at this early stage of your case.

I, Miriam E. Briggs-Muhammad, is the plaintiff herein and do believe that all of the above defendants has violated my Constitutional Rights. Specifically, the Plaintiff contends that Wal-Mart retaliated against her because she filed several law suits against them as well as Discrimination Complaints under Wisconsin Fair Employment Act. It must be stated that Wal-Mart Store East, LP, which is the operating entity for Store Number 2335 in Madison, Wisconsin where the Plaintiff was employed. At the outset the Plaintiff wish to point out to this Court that the Plaintiff has (severe learning Disability) and it is sometime hard to comprehend the English language. And under those circumstances the Plaintiff husband Mr. Terry Briggs will be assisting her with the drafting of this complaint. Moreover, because additional facts likely would be uncovered through discovery or following a full investigation, the Plaintiff in no way waives its right to present new or additional information at a later date, for substance or clarification.


Case: 3:09-cv-00193-vis    Document #: 1    Filed: 04/01/2009    Page 3 of 12

Page 1

Furthermore, the Plaintiff does not waive, and hereby preserves, any and all substantive and procedural defenses that may exist to all of the Defendants Response. Also the John and Jane Does herein the Plaintiff does not have they correct names, but the Plaintiff learn the true identity of all of the John and Jane Does the Plaintiff be amending this complaint to reflect such identity. Plaintiff feel that here constitutional rights has been violated under the 1, 6, 8, and 14 amendment to the U.S. Constitution. Now the Plaintiff will attemp to give a "Factual Background" outline as to what happen that is causing this Plaintiff to bring this lawsuit into federal court. And would respectfully request that if anything within this complaint is not clear, that this honorable Court allow the Plaintiff to amend this complaint. Specifically, I the Plaintiff feel I was discriminated and retaliated against by all the defendants because I was a class member in several lawsuit against Wal-mart. At any rate, I was employed by Wal-mart since April 2005, and I was fired on October 9, 2008. At the time of my termination, my supervisor was Defendant Peggy Wilson, and my position was cashier. My rate of pay was $9.00 per hour. Defendant Peggy Wilson informed me of my termination, and at the time, she said I was being terminated because of my attendance. I was not provided with any documentation at the time of my termination, but a couple of days following my termination I was provided with "paperwork"

(WDWI rev. 4/07)  (Non-Prisoner Complaint)

which described why I was terminated. I provided the Board Agent with a copy of the "green sheet". The "green sheet" does not say that I was terminated for excessive absences, rather, it states that I was terminated for misconduct. I believe I was terminated because of my previous board charge and my involvement with Wake Up Wal-Mart.

3. Prior to my termination, I was disciplined for my attendance. (After I was terminated I was given a coaching for improvement form, which I provided to the Board Agent. This form discusses my absences as early as August 4, 2008). My form states that as of August 4, 2008, I had six (6) unexcused absences, which I do not disagree with. But, my absences were medically related; I was absent because I was ill. I also received coaching in August for my absences. (Coaching is a form of discipline; Wal-Mart calls it "coaching for improvement". Wal-Mart feels that by coaching an employee an employee will improve his/her behavior.) I believe that when I received coaching in August 2008, that was the first time I received coaching for my attendance in 2008. I did receive coaching in April 2007 for my attendance as well, and that coaching remained on my record for one year. (All coachings remain on an employee's record for one year.) When I was coached in August 2008, I was told that my attendance had to improve over the next six (6) months and that if my attendance did not improve then there would be the next level of coaching.

4. After my coaching in August I still had some attendance issues, and I was given coaching again on October 5, 2008. When I received coaching on October 5, 2008, I had three (3) unexcused absences by October 2, 2008. (I actually had a doctor's excuse for each of these absences, but I was told that a doctor's excuse was not an excused absence.)

5. My coaching session on October 5, 2008 was conducted by Dan Astle. Dan called me into his office on October 5th and it was him and another lady, who was the night manager, and I do not know her name. Astle asked me if I knew why I was there, and I told him no. I asked him why was he doing the coaching and he was the night supervisor and I was the second shift employee. He said that was what he did at night, and that it was his responsibility to call me in before I got off of work so we could talk about my coachings. He then said that I had a problem with my attendance. I told him that I had doctor excuses for each absence. He told me that under the new policy that went into effect October 2007, doctor's excuses were no longer allowed. He then said

Page 2

that I had reached my next level of coaching, which was the decision making day. (A decision making day is a paid day off so that the employee can reflect upon his/her wrong doing.) He said that my decision making day would be October 6, 2008, and that when I returned to work to see Beth, a manager and whose last name I do not know. He said that I would see her because he would be on vacation when I returned. He asked if I understood the culture and procedure, and I said yes. I told him that it wasn't about my attendance but about the litigations that I had going on against Wal-Mart. He said that he didn't know anything about my litigations and that he was just doing the attendance. The meeting lasted approximately 15 minutes and then ended. I did not take any notes during or following the meeting. The other lady that was present didn't say anything.

6. I was regularly scheduled to be off of work October 7th and 8th, 2008. I returned to work on October 9, 2008. When I returned to work on October 9, 2008, I met with Beth and K.C. to do my plan of action. The meeting wasn't very long; it lasted approximately 10 – 15 minutes. (My plan of action is reflected on my coaching for improvement form. I want to note that my plan of action has the wrong date. It says October 5, 2008, when it should say October 9, 2008; that was my error. I actually wrote the plan while I was off of work and I re-typed it onto my coaching for improvement form.) I do not know K.C.'s last name but he was one of the assistant managers. In my plan of action I stated that the best way to correct my absences was for me to stop being medically ill.

7. Once I finished typing out my action plan, the meeting ended, and I went to the floor. I did not take any notes during or following the meeting.

8. I was out on the floor for approximately an hour before I was called back into the office. I was called into Peggy Wilson's office by Lauren, whose last name I do not know. Lauren is one of customer service managers. Wilson is the store manager. When I got into Wilson's office, Wilson was present and the loss prevention manager from Bentonville, AK was present. I do not recall the loss prevention manager's name. At that meeting, the loss prevention manager introduced himself. He said he was from Bentonville, AK and that he would not have come into town, unless there was a serious problem. I asked him what was the problem. He asked if I remembered an associate coming through my line last month and ringing her up wrong. I told him that I couldn't ring her up wrong because the price is a scan bar that came from the fabric department. I told him that if the price was wrong then the person in the fabric

Page 3

department made the mistake. He then said the associate came to management and was worried about what I had done. I told him I had a right to face my accuser and asked who was my accuser. I asked him why was he coming to me after my decision making day to ask me about something that happened last month. He then said that it was an ongoing investigation. I told him that this wasn't an ongoing investigation and that this had nothing to do with my attendance. I told him that this was retaliation because I had filed an action with the Labor Board and I was a woman that would fight for my constitutionally protected rights. I then said that not only am I fighting for my constitutionally protected rights, I am also part of one of the biggest class action lawsuits against Wal-Mart, which is the Betty Duke case. (This is a gender discrimination case.) I then said that I had two injuries, which I filed workman's comp for. He then said that he wasn't aware of that and that he was there because he was the asset protection manager and that he would not have been called in, unless there were some serious problems. I then told him that this wasn't about shrinkage, but that it was about my litigations against Wal-Mart. He then asked me if I knew what shrinkage was. I said yes, it was when the store loses merchandise from shoplifting by employees or the public. And, he said that was right. He then said that shrinkage also occurred when they had to pay out money for injured employees or customers. He said that this payout hurts his bonus, my bonus, Peggy's bonus and the whole store. He said that when we lose assets then the whole store suffers. I then told him that this wasn't about me ringing up an associate for the wrong price nor was it about my attendance. I told him that this was about me having all of these claims out against Wal-Mart. He then said that this was about shrinkage. I then said that if this was about shrinkage then I should talk to a lawyer. He then said that if I was going to have a lawyer involved, then our conversation was over. He then turned to Peggy and asked her if she had anything to add, and she said no. He then turned to me and said that I could be excused and go back to my register.

9. (At the time I spoke with the loss prevention manager, I did not remember the incident he was referring to. In preparation for the affidavit I somewhat what recalled the associate from the fabric department coming through my line. But, I do not recall the specifics. I do not recall the associate's name; I know her face when I see her. Other than the day when the loss prevention manager called me into the meeting, I was unaware that I had undercharged her. This was my second time involved in an incident

Page 4

where I undercharged an employee. I undercharged an employee back in 2007, and that time it was done by accident. I was ringing up an associate and the associate told me that she was purchasing something from clearance, but when I rang up the merchandise it didn't reflect such. I then typed in the lower amount, but after doing such, I thought that I should notify the customer service manager to address the issue, which is what I did. The customer service manager at the time told me to charge the associate at the price that it was scanning for and not the reduced amount. I was not disciplined for the matter.)

10. I went back to my register. Joshua, whose last name is unknown and who is one of the customer service managers, noticed me crying and told me to take a break. When I took the break, I went back to personnel. When I got there, I started completing my insurance papers for the new year. While completing my insurance papers, Sarah came to the door. Sarah is the manager for personnel, and I do not know her last name. She told me that Peggy wanted to see me in Peggy's office. I then went into Peggy's office, and I noticed a "green sheet" on her desk. (When I saw the green sheet, I knew that Peggy decided to terminate me.) Peggy said that they decided I reached my last level of coaching due to my excessive absences and tardiness, and that they decided to terminate my me. She asked me to sign the sheet and I told her no. I then said that she knew this was about Wake Up Wal-Mart and all of my charges. She then said that it could be, but that I would have to prove that. I told her that it was obvious in the swiftness of my coaching. I said that I was coached on October 4th, had a decision day on October 6th, and when I came back I spoke with Beth and then I spoke with her. I told her that I wasn't stupid. I told her that they had went through four (4) levels of coaching in the matter of a week. (They went through four (4) coaching levels because Dan gave me a coaching on October 5, 2008, my decision making day was October 6, 2008, and that was a coaching; when I came back on October 9, 2008, I did my plan with Beth, and that was considered a coaching, and then I was called back into the office later that day and received a coaching from Peggy and the loss prevention manager. The policy is that if you have three (3) coachings, then it is an automatic termination.) I then asked for a copy of the green sheet, and she said that she couldn't provide me with a copy because I refused to sign. I then gathered my things and left the store.

Page 5

11. I came back the next day and saw Peggy. I told her that I needed a copy of the green sheet for unemployment and she told me that she was terminating me involuntarily, meaning I disagreed with the termination. She told me to write a note saying I wanted a copy of my exit interview, which I did, and she provided me with my exit interview.

12. (When I got home I noticed that the Employer only checked misconduct and did not check that I had excessive absences and tardiness, which is what Peggy said I was being terminated for.)

13. I believe I was terminated because I filed CA-17839. Once that case was closed, one of the managers made a comment to me about my charge. Neil, who was one of the assistant managers at the time, said it was good that I withdrew my charge because it was in my best interest to withdraw the charge. The conversation came about after I told him that I had withdrew my charge. (Neil is now a manager for Wal-Mart in Janesville.) He made this statement sometime in July 2008, and we had this conversation near the time clock. There were other associates in the hall at the time, but I do not know who they were.

14. After Neil left the store to work in Janesville, he came back to visit sometime in August 2008. When he came I said, "hey manager Neil," and he responded by saying, "you mean to tell me that they still got you around here? They haven't got rid of you yet" He looked serious to me, and he didn't look as though he was joking. (He looked surprised as though I was still there and I say this because his eyes were big.)

15. These are the only comments that anyone from management has said to me.

16. My co-workers have made comments such as, "here comes trouble." Or, they would ask me if I was staying out of trouble. One of the girls from domestics named Peggy, and I do not know her last name, told me that I had to be careful around Wal-Mart. She said that they didn't want no union there, and that someone from the union was coming to talk to the employees the next day. She then asked me how I felt about bringing in a union, and she asked me if I would talk with the union. I told her I would talk with the union because that is what I do with Wake Up Wal-Mart.

17. These are basically all of the comments that my co-workers have made.

18. I also believe that I was terminated because of my involvement with Wake Up Wal-Mart. After I withdrew CA-17839, I remained active in Wake Up Wal-Mart. Since I withdrew that charge, I continued to let employees know that Wake Up Wal-Mart was out there. I would print information about Wake Up Wal-Mart and leave the print outs in

Page 6

the break room. I talked to both managers and associates about Wake Up Wal-Mart. The managers I spoke to were Sarah, Melanie, Louis, Joshua, and Zach. I do not know these managers last names. Whenever I spoke with them they would respond by saying that Wal-Mart doesn't participate in union activity. One specific example would be a conversation I had with Joshua near the end of August 2008. He and I were at the front of the store, just making some small talk at first when I told him that I had adopted our store to participate in Wake Up Wal-Mart. He then said that he wasn't interested in that and that was how the conversation ended. The conversation wasn't long at all. I do not recall any associates near us, just regular customers walking past us. Another specific example would be I was talking to Louis, one of the customer service managers, back in July 2008 about Wake Up Wal-Mart. I was coming to work to clock in. I had some flyers in my hand that I was about to leave in the break room, and as I was about to go clock in I walked passed Louis. I told her that I had adopted our store as a store for Wake Up Wal-Mart to work with. She then said that they didn't participate in union activities, and I told her that it wasn't a union. She didn't take the literature and just walked the other way. This conversation was about five minutes. I do not recall the other associates near us; there were mainly customers walking past us. Of these managers, Louis is one of the managers that signed my exit interview, but I do not know if she participated in the decision making process to terminate me. (The exit interview and "green sheet" are the same.)

19. If the Employer wanted to terminate me for my attendance, then I should have been terminated a long time ago. My coaching regarding my absences was not because of my involvement with Wake Up Wal-Mart; it was because of Wal-Mart's crappy absentee policy. Nevertheless, I should not have been terminated for my absences because I was already disciplined on October 5, 2008. After I received my discipline for my absences on October 5, 2008, I was not absent or late again. I was just terminated for no reason on October 9, 2008. The only other reason why I could have been terminated would have been because I undercharged someone. But, I deny the accusation that I undercharged the associate. I did not override the bar scan. What was scanned was what I charged the associate. Even the unemployment office said that the Employer failed to establish that I was terminated because of employee misconduct, and I provided a copy of the unemployment determination letter to the Board Agent. I didn't do anything wrong.

C. REQUEST FOR RELIEF

1. I  Miriam E. Briggs-Muhammad  request that I be allowed to commence this action without
   (do, do not)
   prepayment of fees and costs, or security therefor, pursuant to 28 U.S.C. §1915. The attached affidavit of indigency has been completed and is submitted in support of this request for leave to proceed in forma pauperis.

2. In the following space, please indicate exactly what it is you wish this court to do.

The Plaintiff demands a trial by Jury on all issues to which they are entitled
Actual damages from each defendants in the amount 25,000,000
Compensatory and consequential damages from each defendants in the amount 50,000,000
Punitive damages from each defendants in the amount of 500,000,000
Attorney fees and the costs of this action
Such other relief as the Court may deem just and proper.

Dated this 31st day of March, 20 09.

_____
(Signature) Miriam E. Briggs Muhammad

9 O'Brien Ct
(Street or PO Box)

Madison Wisconsin 53714
(City, State Zip Code)

JS 44 (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

REC'D/FILED
2009 APR -1 PM 1:25

## I. (a) PLAINTIFFS
*Miriam E Briggs-Muhammad*

**DEFENDANTS**
*Wal-Mart et al*

(b) County of Residence of First Listed Plaintiff
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

(c) Attorney's (Firm Name, Address, and Telephone Number)

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☐ 2 U.S. Government Defendant
- ☐ 3 Federal Question (U.S. Government Not a Party)
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | **IMMIGRATION** | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - Alien Detainee | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | ☐ 465 Other Immigration Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

- ☐ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):

Brief description of cause: *Civil Right Complain*

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☐ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions):
JUDGE _____   DOCKET NUMBER _____

DATE _____   SIGNATURE OF ATTORNEY OF RECORD _____

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

## Pro Se/Non-Prisoner Complaint Package

### Instructions - Read Carefully

1. In order for the United States District Court to consider this complaint, you must fill it out in legible handwriting or on a typewriter. Also, you must answer each question or fill in each blank clearly and simply. If you cannot finish an answer in the available space on the front of the page, you may continue the answer on another sheet of paper. If you continue an answer this way, make sure you identify clearly which question the continuation applies to.

2. Before submitting your proposed complaint to the court, you must do several things:

   a. Prepare an original and an identical copy of your proposed complaint and all attachments or exhibits to your proposed complaint for

      (1) THE COURT
      (2) EACH DEFENDANT YOU NAME
      (3) YOURSELF

      For example, if you name two persons as defendants, you should prepare and return the original and two copies to the court (the original for the court and a copy for each named defendant), and retain one copy for your own reference.

      DO NOT MAIL A COPY OF YOUR COMPLAINT DIRECTLY TO ANY DEFENDANT(S).

   b. If you sue an officer or agency of the United States, you must send the court two additional copies of the complaint and any attachments.

   c. Submit a check or money order in the amount of **$350.00**. Make the check or money order payable to the **CLERK, U.S. DISTRICT COURT**. If you cannot afford to prepay the fee, you must complete the affidavit of indigency (attached), declare it to be true and submit the affidavit with your proposed complaint.

3. Again, you are reminded that if you attach any documents to your complaint, you must provide copies of each attachment with each copy of the complaint. It is not the court's function to make or provide copies for litigants.

4. IT IS YOUR RESPONSIBILITY TO KEEP A COPY FOR YOUR OWN FILE OF EVERY DOCUMENT OR LETTER THAT YOU SEND TO THE COURT. Mail your proposed complaint with the necessary copies, your check or money order or affidavit of indigency to:

   Clerk, U.S. District Court
   Western District of Wisconsin
   P.O. Box 432
   Madison, WI 53701-0432

(WDWI 4/07)
P:\Forms\42 USC 1983